## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ELI ASHKENAZI, individually and on behalf of all others similarly situated, | : | CIVIL ACTION |
| | : | |
| | : | NO. 3:15-cv-02705-PGS-DEA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BLOOMINGDALE'S, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER CONDITIONALLY CERTIFYING CLASS AND GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT AGREEMENT

## <u>TABLE OF CONTENTS</u>

Page(s)

Table of Authorities…………………………………………………………………ii-iv

I.      NATURE OF THE LITIGATION……………………………………………...1

II.     NATURE OF SETTLEMENT………………………………………………….3

III.    THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23……………………………6

        A.  Numerosity………………………………………………………………6

        B.  Commonality……………………………………………………………8

        C.  Typicality………………………………………………………………...9

        D.  Adequacy of Representation……………………………………………10

        E.  Predominance and Superiority…………………………………………10

            1.  Common Questions of Law and Fact Predominate Over Individual Ones………10

    2.  A Class Action is the Superior Method for Resolving the Class Claims……………11

IV.     PRELIMINARY APPROVAL SHOULD BE GRANTED…………………………...12

Conclusion………………………………………………………………………14

i

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012)................14

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)......................................6, 10

*Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006)........................................9

*Bonett v. Educ. Debt Servs.,*
2003 U.S. Dist. LEXIS 9757 at *5, 2003 WL 21658267 (E.D. Pa. May 9, 2003)..........7

*Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 545 (D.N.J. 1999)...........................10

*Cavin v. Home Loan Ct., Inc.*, 236, F.R.D. 387, 396 (N.D. Ill. 2006)...............................11

*Cf. Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015)...............................13

*Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000)...............................13

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 487-88 (E.D. Pa. 1985)..........13

*Garret v. Sharps Compliance, Inc.,*
No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012)......................................13

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975)........................................................12, 13

*Hashw v. Dep't Stores Nat'l Bank,*
No. 13-727 (RHK/BRT), 2016 U.S. Dist. LEXIS 61004 (D. Minn. 2016).................14

*In re Bulk Extruded Graphite Prods.,* 2006 U.S. Dist. LEXIS 16619.................................7

*In re Capital One TCPA Litig.,* 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015).........14

*In re Cmty. Bank of N. Va.,* 418 F.3d 277, 300 (3d Cir. 2005)........................................6

*In re Gen. Motors Truck Litig.,* 55 F.3d 768, 784 (3d Cir. 1995)...............................12, 13

*In re Linerboard Litig.,* 296 F. Supp. 2d 568, 577-78 (E.D. Pa. 2003)...............................12

*In re Mercedes-Benz Antitrust Litig.,* 213 F.R.D. 180, 186 (D. N.J. 2003).........................11

*In re Prudential Ins. Co. of Am. Sales Practice Litig.*,
    148 F.3d 283, 311 (3d Cir. 1998)...................................................................9, 10, 12

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001)................................8

*Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998).........................................................9

*Labbate-D'Alauro v. GC Servs. Ltd. P'ship,* 168 F.R.D. 451, 458 (E.D. N.Y. 1996)............11

*Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS,
    2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016).............................13

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597–98 (3d Cir. 2012)..............................8

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 182 (3d Cir. 2001).........7

*Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436, 439-40 (E.D. Pa. 2002)..............12

*Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013)...............................8, 9

*Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR,
    2013 U.S. Dist. LEXIS 72947, at *2, *9 (M.D. La. May 23, 2013)..........................13

*Steinfeld v. Discover Fin. Servs.*,
    2014 U.S. Dist. LEXIS 44855, at *4, *11-*12 (N.D. Cal. Mar. 31, 2014).................14

*Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001)..............................................8

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*)...........................6, 11

*Susinno v. Work Out World, Inc.*,
    No. 15-cv-5881, 2017 WL 5798643 (D.N.J. Nov. 28, 2017)...............................1, 2

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005).........................11

*Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011)..........................................8

*Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982)...............................................13

*Wright v. Nationstar Mortg. LLC,*
    No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016).....................14

**STATUTES**

Page(s)

CAFA…………………………………………………………………………………...5

Fed. R. Civ. P. 23…………………………………………………………………….6

Rule 23(a)…………………………………………………………………7, 8, 10, 12

Rule 23(a)(1)………………………………………………………………………...7

Rule 23(a)(2)…………………………………………………………………………8, 9

Rule 23(a)(3)………………………………………………………………………9

Rule 23(a)(4)………………………………………………………………………..10

Rule 23(b)(3)………………………………………………………………….10, 12

Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*……………..1, 9, 10, 11, 13, 14

**OTHER**

Page(s)

H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009)……..12

MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004)…………………….12

Plaintiff Eli Ashkenazi ("Plaintiff"), individually, and as representative of the class of persons defined below in Paragraph 1(a) ("Settlement Class"), requests that this Court enter an order which (i) preliminarily approves the Class Settlement Agreement ("Settlement Agreement") with Defendant, Bloomingdale's, Inc. ("Defendant") attached hereto as Exhibit A; (ii) certifies for settlement purposes the Class as defined in Paragraph 10.4 of the Agreement; (iii) appoints Ross Schmierer of DeNittis Osefchen Prince, P.C., Ari Marcus of Marcus & Zelman, LLC, and Todd Friedman and David Levin of Law Offices of Todd M. Friedman, P.C., as Class Counsel; (iv) appoints Plaintiff as representative of the Settlement Class; (v) sets dates for Class Members to opt-out of, or object to, the Agreement; (vi) schedules a hearing for final approval of the Agreement; (vii) approves the notices to Class Members in the form of Exhibits 1 and 2, to Exhibit A; and, (viii) finds that the proposed notice satisfies the requirements of due process. A copy of the proposed preliminary approval order is attached as Exhibit 4 to Exhibit A.

## I.      NATURE OF THE LITIGATION

Plaintiff filed a class action Complaint on April 16, 2015 (ECF No. 1) and a First Amended Complaint on June 26, 2015 (ECF No. 12). In Plaintiff's First Amended Complaint, Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq*. ("TCPA"), by sending a text message to the class members without first obtaining their express consent.

The Parties proceeded to conduct extensive written discovery and several depositions. On December 30, 2016, Defendant filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 34). Defendant's Motion to Dismiss was in part based upon this Court's decision in *Susinno v. Work Out World, Inc.*, No. 15-cv-5881, 2017 WL 5798643 (D.N.J. Nov. 28, 2017). On January 20, 2017, by request of the Parties, a Consent Order was entered by

Honorable Magistrate Judge Douglas E. Arpert staying all proceedings in this case pending the United States Court of Appeals for the Third Circuit's resolution of the appeal of this Court's decision in *Susinno*, the outcome of which the Parties believed would directly impact this case (ECF No. 35).

On July 10, 2017, the Third Circuit Court of Appeals filed its decision in *Susinno*, 823 F.3d 346 (3rd Cir. 2017). The parties discussed the impact of the *Susinno* decision on this case and on August 24, 2017, Magistrate Judge Arpert, by request of the Parties, entered a Consent Order lifting the stay of proceedings and reinstating this case to the Court's active docket (ECF No. 37). On October 4, 2017, the Parties notified Magistrate Judge Arpert that they had agreed to conduct a mediation before the Honorable Stephen M. Orlofsky on December 19, 2017. On October 6, 2017, Magistrate Judge Arpert entered a Letter Order administratively terminating this action while the Parties were in mediation (ECF No. 40). On December 19, 2017, the Parties participated in a full day mediation with the Honorable Stephen M. Orlofsky which resulted in this proposed settlement.

Counsel for the Parties have investigated and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals. Defendant has at all times denied allegations of wrongdoing and liability asserted in the Action.  Based upon counsels' review and analysis, the Parties have entered into the Settlement Agreement.

2

## II.    NATURE OF SETTLEMENT

1.    The Parties desire to settle and compromise the litigation on the terms and conditions embodied in the Settlement Agreement and agree as follows:

(a)    Settlement Class Certification. The Parties have stipulated to certification, subject to court approval, of the following class for settlement purposes only.

All persons who, upon signing up for Bloomingdale's customer loyalty program known as "Loyallist" between August 24, 2014 and May 16, 2015, were sent a successfully transmitted text message from the short code 256-66 reading "Bloomingdale's Promo Alerts: Reply Y now to confirm you want texts! Reply HELP for help. 1 msg/wk. MSG&Data Rates May Apply. Q's 800-777-0000."

The "Settlement Class" means all members of this class who do not validly opt out of the Settlement and are not otherwise validly excluded.

2.    During discovery, Plaintiff undertook extensive efforts to determine the number of individuals who received the text message at issue and the relevant time frame at issue. Based upon the information uncovered during written discovery and depositions, the Parties agreed to a notice plan that would provide direct notice to the approximately 46,561 individuals who received the text message at issue during the relevant time frame upon signing up for Bloomingdale's Loyallist account. [Exhibit A, ¶ 12].

(a) Settlement Class Recovery. The proposed Settlement establishes a class settlement fund of $1,400,000.00– consisting of a $750,000 cash settlement fund and a $650,000 voucher settlement fund – which the Class Administrator, Kurtzman Carson Consultants LLC ("KCC") ("Class Administrator") will distribute among those Settlement Class Members who submit valid claims, and who do not exclude themselves from the Settlement ("Claimants"). Each Settlement Class Member who submits a valid claim will be allowed to choose between either a $25.00 cash

3

payment or a $50.00 product voucher. The vouchers will be redeemable in exchange for, or for discounts against, Defendant's products offered for sale, subject to applicable law. [Exhibit A, ¶¶ 14.4.3-14.4.5]. Claimants who choose to receive the cash payment will receive a check, which will be void one hundred and eighty (180) days from the date it is issued. [Exhibit A, ¶¶ 14.4.1-14.4.2].

Any cash remaining in the Cash Settlement Fund – after payment of all timely Claims of Class Members, the Class Counsel Fees and Expense Award, as approved by the Court, the Incentive Awards to the Class Representative(s), as approved by the Court, and the Administrative Fee of the Settlement Administrator, as approved by the Court – shall be donated by *cy pres* award to the Community Food Bank of New Jersey, subject to Court approval. This includes any Settlement Class Members whose cash benefit checks have not cleared within one hundred eighty (180) days after issuance. [Exhibit A, ¶ 14.6-14.7]. Any voucher value remaining in the Voucher Settlement Fund after payment of valid Voucher Claims as set forth in the Settlement Agreement shall be considered void. [Exhibit A, ¶ 14.7].

(b) Relief to Plaintiff. Plaintiff shall move the Court for an incentive award not to exceed $10,000, to be paid out of the Settlement Fund. [Exhibit A, ¶ 14.3.1 and 15.2].

(c) Attorneys' Fees and Costs. Plaintiff shall move the Court for an award of attorneys' fees in an amount not to exceed thirty percent (30%) of the total $1,400,000 value of the Settlement Fund ($420,000), plus reimbursement of Class Counsels' costs and expenses in the amount not to exceed $30,000. Defendant has agreed not to oppose this motion. [Exhibit A, ¶ 14.3 and 15.1].

4

*BOS 48616503v1*

(d) <u>Settlement Class Notice</u>. Within ten (10) calendar days following Preliminary Approval, Defendant will provide to the Claims Administrator the Class List, identifying the list of individuals who received the text message at issue during the relevant time frame upon signing up for Bloomingdale's Loyallist account. The Claims Administrator shall rely on email notice and direct mail to notify persons in the Settlement Class in the forms attached hereto as <u>Exhibits 1 and 2</u> to <u>Exhibit A</u>. Both the Email Notice and the Mail Notice will include a Claim Form which may be emailed or mailed back to submit a claim upon the Settlement Fund for a settlement award. Each notice shall refer to the Toll-Free Settlement Hotline for Class Members to call with Settlement-related inquiries and answer the questions of Class Members who call with or otherwise communicate such inquiries. The Claims Administrator will send the Email Notices and mail the Mail Notices within twenty-four (24) days of Preliminary Approval. [<u>Exhibit A</u>, ¶ 12.3].

(e)    <u>CAFA Notice</u>. Defendant, through coordination with the Claims Administrator, shall be responsible for timely compliance with all CAFA notice requirements.

(f)    <u>Settlement Class Members' Right to Opt Out or Object</u>. Any Settlement Class member may choose to be excluded from the Agreement by opting out within the time period set by this Court. Any Settlement Class member who validly opts out of the Settlement Class and Agreement shall not be bound by any prior Court order or the terms of the Agreement. [<u>Exhibit A</u>, ¶¶ 18.1-18.3]. Settlement Class members may also object to the Agreement and, if they choose to do so, they may also appear and be heard at the fairness hearing. [<u>Exhibit A</u>, ¶ 18.4].

5

### III.    THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23

During the pendency of the case, Defendant disclosed information relevant to the requirements of Fed. R. Civ. P. 23, including the size of the putative class, which the Parties have relied upon in reaching the Agreement and in bringing this motion. In considering the proposed settlement, the first question for the Court is whether a settlement class may be conditionally certified for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) ("[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Fed. R. Civ. P. 23(a) and (b) are met." (internal quotation marks omitted)); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 300 (3d Cir. 2005) ("[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23.").

The parties have reached a proposed Agreement on behalf of the Settlement Class defined above. The proposed Agreement meets all of the requirements of Rule 23.

### A. **Numerosity**.

To determine the approximate size of the Settlement Class, Plaintiff reviewed lists of all text messages sent from Defendant's short code during a period in excess of the time frame referenced in the Class definition. The time frame was narrowed based upon information obtained during the deposition of two of Defendant's Rule 30(b)(6) witnesses.  Plaintiff's expert witness, Jeffrey Hansen, then filtered the list of messages to narrow them based on the shorter time frame and the specific wording of the text message at issue. Based upon the results of Mr. Hansen's

6

analysis and further discussions between the parties at their mediation session, the parties determined the approximate size of the Settlement Class to be fewer than 50,000 individuals.

Following mediation, Bloomingdale's Marketing Systems Manager, Mr. Lance Hopenwasser, conducted a further analysis to determine the exact settlement class. Specifically, Mr. Hopenwasser accessed the Bloomingdale's database containing data relating to the creation of Bloomingdale's website profiles and Loyallist accounts. He conducted a database search for the date range at issue to identify all of the phone numbers in which a Loyallist registration's creation date matched the Bloomingdales.com account profile creation date. He then cross-referenced the resulting phone numbers with the records in Bloomingdale's possession from its third party vendor regarding text messages sent to determine which of those phone numbers were successfully sent the message at issue immediately after the creation of both the Bloomingdales.com profile and Loyallist account associated with the phone number. His inquiry identified 46,561 instances between August 24, 2014 and May 16, 2015 in which the subject text message was successfully transmitted from short code 256-66 immediately after the creation of a Loyallist account and Bloomingdales.com profile to a unique phone number provided to Bloomingdale's by customers creating new Loyallist accounts.

Regardless of the precise number, the size of the Settlement Class easily satisfies the numerosity requirement of Rule 23(a)(1). The first requirement of Rule 23(a) is that the class members be so numerous that joinder is not practicable. "Numerosity requires a finding that joinder of all members is impracticable." *Bonett v. Educ. Debt Servs.,* No. 01-6528, 2003 U.S. Dist. LEXIS 9757 at *5, (E.D. Pa. May 9, 2003) (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 182 (3d Cir. 2001)); *In re Bulk Extruded Graphite Prods.,* 2006 U.S. Dist. LEXIS 16619 at *14 (Numerosity satisfied where traditional joinder of parties would be

7

"unworkable"). Generally, if the "potential number of plaintiffs exceed 40, the [numerosity] prong of Rule 23(a) has been met." *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001). In the case at bar, the Proposed Class includes members totaling approximately one thousand times the number found to be sufficient by the Third Circuit Court of Appeals in *Stewart*. It is unworkable for the members of a proposed class that large to be joined together in the same proceeding. As a result, the numerosity requirement is satisfied.

**B. Commonality**.

Satisfaction of the commonality requirement under Rule 23(a)(2) requires that Plaintiff demonstrate his claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001) (internal quotation marks omitted); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597–98 (3d Cir. 2012). As this Circuit reiterated recently, "that bar is not a high one. We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, when plaintiffs did not bring identical claims, … and, most dramatically, when some plaintiffs' claims may not have been legally viable, …. In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal–Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011), and concluding that while "Dukes is an intervening and

8

pointedly clear explication of the law, it did not announce any change in the test for determining commonality." *Rodriguez*, 726 F.3d at 381, n. 2).

The primary questions, which focus on the uniform conduct and procedures of the Defendant, are common to the Class. The Settlement Class members have identical legal claims based upon a specific text message sent by Defendant to Plaintiff and each Settlement Class member which was alleged to have been sent in violation of the TCPA.

### C. Typicality.

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir. 1998). The "typicality" requirement of Rule 23(a)(3) is satisfied for the same reasons that the "commonality" requirement of Rule 23(a)(2) is met. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). To conduct the typicality inquiry, the court must examine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006). Here, Plaintiff's claims share the same common issues of fact and law as those held by the Settlement Class members – namely, Defendant sent a specific text message to the Plaintiff and Settlement Class members which was alleged to have been sent in violation of the TCPA. Plaintiff, as a member of the Settlement Class, has the same interest in resolution of the issues as all other members of the Class and Plaintiff's claims are typical of all members of the Class. Thus, the typicality requirement is satisfied.

BOS 48616503v1

### D. Adequacy of Representation.

Plaintiff's counsel is experienced in class action and TCPA litigation. In addition, Plaintiff has no interests which are antagonistic to the Settlement Class members. Therefore, Plaintiff and his counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4). The Declarations of Ross Schmierer, Esq., Ari Marcus, Esq. and Todd Friedman, Esq., which are respectively attached hereto as Exhibits B, C and D and E, outline their qualifications to serve as Class Counsel.

### E. Predominance and Superiority.

In addition to meeting the requirements of Rule 23(a), a money-damages class must satisfy Rule 23(b)(3), namely that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed R. Civ. P. 23(b)(3). Both of these requirements are satisfied in the present case. Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely.

### 1. Common Questions of Law and Fact Predominate Over Individual Ones

Rule 23(b)(3) allows class certification of settlement classes where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and need not consider whether the case would be manageable if actually brought to trial. *Amchem Prods.*, 521 U.S. at 620; *Prudential*, 148 F.3d at 321. Predominance also does not require that claims be identical. *See Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 545 (D.N.J. 1999) (stating that "class members need not be

identically situated upon all issues, so long as their claims are not in conflict"). Predominance exists where the efficiencies gained by the class resolution outweigh the individual issues. *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 186 (D. N.J. 2003) ("[C]ommon issues [must] be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members"). In discussing predominance, the Third Circuit has noted that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. Here, each member possesses a claim based on receipt of a single text message sent to them by the Defendant. Plaintiff alleges on behalf of the Class that the sending of those text messages is the primary common issue for all members of the Settlement Class.

### 2.   A Class Action is the Superior Method for Resolving the Class Claims

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Aggregating these single text TCPA claims will eliminate the potential for "repetitious litigation" and "inconsistent adjudications" which could result if the claims were brought separately, and which otherwise "might stand in the way of a beneficial comprehensive settlement." *See Labbate-D'Alauro v. GC Servs. Ltd. P'ship,* 168 F.R.D. 451, 458 (E.D. N.Y. 1996). Separately litigating the common issues that bind the Settlement Class would be a practical impossibility, even assuming all consumers had notice of their claims and it were economically feasible to pursue these claims on their own. Where the alternative to a class action is likely to be no action at all for most of the class members, there is strong presumption in favor of a finding of superiority. *Cavin v. Home Loan Ct., Inc.*, 236, F.R.D. 387, 396 (N.D. Ill. 2006).

## IV.    PRELIMINARY APPROVAL SHOULD BE GRANTED

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436, 439-40 (E.D. Pa. 2002). Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. The third step is a settlement approval or final fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004), available at http://www.fjc.gov ("MANUAL"). While a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule." *Prudential*, 148 F.3d at 308-09.

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement appears fair and reasonable. MANUAL at § 21.62. The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court. Of course, settlements of class actions are favored in the law. *See In re Gen. Motors Truck Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Preliminary approval does not require the trial court to affirmatively answer the ultimate question of whether a proposed settlement is fair, reasonable and adequate. That determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class. *See In re Linerboard Litig.*, 296 F. Supp. 2d 568, 577-78 (E.D. Pa. 2003) (citing factors established in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975)).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires an evaluation by the attorneys for the parties based upon a comparison of "the terms of

the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73

(2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000) (citing factors

established in *Girsh*). Therefore, many courts recognize that the opinion of experienced counsel

supporting the settlement is entitled to considerable weight. *See Collier*, 192 F.R.D. at 186; *Fisher*

*Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 487-88 (E.D. Pa. 1985).

In addition to being substantively reasonable in relation to the risks and likely rewards of

litigation, the proposed settlement must be "the result of good faith, arms-length negotiations."

*Collier*, 192 F.R.D. at 184. In evaluating this requirement, courts proceed as follows:

> If the proposed settlement appears to be the product of serious informed,
> noncollusive negotiations, has no obvious deficiencies, does not improperly grant
> preferential treatment to Class Representatives or segments of the Class, and falls
> within the range of possible approval, then the court should direct that notice be
> given to the Class Members of a formal fairness hearing, at which evidence may be
> presented in support of and in opposition to the settlement.

*Id.* A finding that these factors are present establishes an initial presumption of fairness. *Id.*; *see*

*also Gen. Motors*, 55 F.3d at 785-86. Here, the proposed settlement meets these standards.

The proposed settlement was achieved after a full day's mediation with Judge Stephen

Orlofsky on December 19, 2017. The expected recovery for the class meets or exceeds many other

TCPA class settlements. *Cf. Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015)

(settlement amount favored final approval, where claims rate resulted in *pro rata* payment of

approximately $13.75 per class member); *Manouchehri v. Styles for Less, Inc.*, No. 14cv2521

NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) (preliminarily approving

settlement where class members could choose to receive either a $10 cash award or a $15 voucher);

*Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *2, *9

(M.D. La. May 23, 2013) (final approval for up to $15 for each claimant); *Garret v. Sharps*

*Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received

between $27.42 and $28.51); *Hashw v. Dep't Stores Nat'l Bank*, No. 13-727 (RHK/BRT), 2016 U.S. Dist. LEXIS 61004 (D. Minn. 2016) (finally approving settlement where "each claimant will receive approximately $33.20"); *In re Capital One TCPA Litig.*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval were each claimant would be awarded $39.66; *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016) (finally approving "$45.00 recovery per claimant"); *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855, at *4, *11-*12 (N.D. Cal. Mar. 31, 2014) ($46.98 to each claimant).  Here, each class member who submits a valid claim will receive either $25.00 in cash or a $50.00 product voucher, depending upon which option they choose.

Thus, the amount each Settlement Class member shall receive is fair, reasonable, and adequate given the purposes of the TCPA and the risk, expense, and uncertainty of continued litigation. *See Hashw,* 2016 U.S. Dist. LEXIS 61004, at *13 ("Given that victory was by no means certain and even if achieved, victory likely would have been a lengthy and costly affair for class members (as the TCPA includes no fee-shifting provision), in the Court's view an immediate, definite payment of $33.20 is both reasonable and fair.")

## V.       CONCLUSION

Accordingly, the Parties respectfully request this Honorable Court grant preliminary approval of the Settlement Agreement and enter the proposed order attached as Exhibit 3, which provides a schedule for notice, objections, opt outs, and submission of claim forms, and sets a hearing to address the question of final approval.

*BOS 48616503v1*

Respectfully submitted this 15th day of June, 2018.

*s/ Ross H. Schmierer*

Ross H. Schmierer, Esq.
DeNITTIS OSEFCHEN PRINCE, P.C.
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
Telephone:  (856) 797-9951
Facsimile:  (856) 797-9978
Email:  rschmierer@denittislaw.com

Ari H. Marcus, Esq.
MARCUS & ZELMAN, LLC
1500 Allaire Avenue, Suite 101
Ocean, New Jersey 07712
Telephone: (732) 695-3282
Facsimile:   (732) 298-6256
E-Mail: Ari@MarcusZelman.com

and

Todd M. Friedman, Esq.
LAW OFFICES OF TODD M. FRIEDMAN
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone:  (877) 206-4741
Facsimile:  (866) 633-0228
Email:  tfriedman@attorneysforconsumers.com

15