**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ELI ASHKENAZI, individually and on behalf of all others similarly situated, | : : | CIVIL ACTION |
| | : | NO. 3:15-cv-02705-PGS-DEA |
| Plaintiff, | : : | |
| v. | : : | |
| BLOOMINGDALE'S, INC., | : : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER GRANTING**
**FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………………..…. ii-iv

I.      NATURE OF THE LITIGATION……………………………………………….. 3

II.     NATURE OF SETTLEMENT…………………………………………….............4

III.    THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23…………….…………...6

        A.      Numerosity……………………………………………………...7

        B.      Commonality……………………………………………………8

        C.      Typicality……………………………………………………9

        D.      Adequacy of Representation……………………………………………9

        E.      Predominance and Superiority…………………………………………...10

                1.      Common Questions of Law and Fact Predominate Over Individual Ones………………………………………………...10

                2.      A Class Action is the Superior Method for Resolving the Class Claims……………………………………………....11

IV.     FINAL APPROVAL SHOULD BE GRANTED………………………………..11

        A.      The Complexity, Expense and Likely Duration of the Litigation; Risk of Establishing Liability and the Risk of Maintaining the Class Action Through Trial and Beyond……………………………………………14

        B.      The Reaction of the Class to the Settlement…………………………...……14

        C.      The Stage of the Proceedings and the Amount of Discovery Completed……………………………………………..15

        D.      The Range of Reasonableness of the Settlement to a Possible Recovery in Light of All the Attendant Risks of Litigation……………………………...……..15

        E.      The Release is Narrowly Tailored to the Claim Brought…………………16

V.      CY PRES………………………………………………………...17

VI.     APPROVAL OF SERVICE AWARD AND ATTORNEY FEES………………………18

VII.    CONCLUSION………………………………………………………...19

i

## **TABLE OF AUTHORITIES**

### **CASES**

*Adams v. AllanceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. 2012)............................................................................................................. 15

*Amchem Products,  Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................. 6

*Beck v. Maximus, Inc.*, 457 F.3d 291 (3d Cir. 2006) ...................................................... 9

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)...................................... 14

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ........................................................ 18

*Bonett v. Educ. Debt Services, Inc.*, 2003 WL 21658267 (E.D. Pa. May 9, 2003) ...................... 15

*Cavin v. Home Loan Ct., Inc.* 236, F.R.D. 387 (N.D. Ill. 2006)...................................... 11

*Collier v. Montgomery County*, 192 F.R.D. 176 (E.D. Pa. 2000)....................................... 13

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015)................................... 15

*D'Alauro v. GC Services Ltd. P'ship,* 168 F.R.D. 451 (E.D.N.Y 1996).................................... 11

*Fisher Bros. v. Cambridge-Lee Indus, Inc.*, 630 F. Supp. 482 (E.D. Pa. 1985) ........................... 13

*Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. 2012)...... 15

*Giddiens v. LexisNexis Risk Solutions, Inc.*, C.A. No. 12-2624-LDD (E.D. Pa. Jan. 20, 2015) .. 19

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975)..................................................... 12, 13

*Hashw v. Dep't Stores Nat'l Bank*, 2016 U.S. Dist LEXIS 61004 (D. Minn. 2016)............. 15, 16

*In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. 2015)................. 15

*In re Cmty. Bank of N. Va.,* 418 F.3d 277 (3d Cir. 2005) ............................................. 7

*In re Flonase Antitrust Litig.*, No. 08-cv-3149, 2013 WL 2915606 (E.D. Pa. June 14, 2013)..... 19

*In re General Motors Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ............................................................................. 12, 14, 16

*In re Linerboard Litig.*, 296 F. Supp. 2d 568 (E.D. Pa. 2003)...................................... 13

*In re Rite Aid Corporation Securities Litig.*, 269 F.Supp.2d 603, (E.D. Pa. 2003), 362 F. Supp.2d 587 (E.D. Pa. 2005)..................................................................................................... 12, 14, 18

*In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012)………………………………………………………………………...20

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986)................................................................................................................ 15

*In re. Bulk (Extruded) Graphite Products Antitrust Litigation,* No. Civ. 02–6030 (WHW) (D.N.J. April 4, 2006)..................................................................................................................... 10

*In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d 283 (3d Cir. 1998)…………9, 12

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3d Cir. 2001) .................................................. 8

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998) ............................................................................... 9

*Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. 2016) ................................................................................................................................ 15

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) .................................................... 8

*Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821 (E.D. Pa. Jan. 24, 2011)................ 19

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)........................................................................... 15

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d Cir. 2001).................. 8

*Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436 (E.D. Pa. 2002).............................. 11

*Robinson v. General Information Services, Inc.*, No. 2:11-cv-07782-PBT (E.D. Pa. Nov. 4, 2014) (Doc. 55) ......................................................................................................................... 19

*Rodriguez v. National City Bank*, 726 F.3d 372 (3d Cir. 2013) .................................................... 9

*Sapp v. Experian Info. Sols. Inc.,* 2013 WL 2130956 at (E.D. Pa. May 15, 2013) ...................... 19

*Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 (M.D. La. 2013) .......................... 15

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ...... 16

*Stewart v. Abraham,* 275 F.3d 220 (3d Cir. 2001)........................................................................ 8

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)................................................................. 7

*Susinno v. Work Out World, Inc.*, 2017 WL 5798643 (D.N.J. No. 15-cv-5881, 2017)................. 3

*Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541 (2011) ............................................................ 8, 9

*Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632 (D.N.J. 1983), aff'd, 726 F.2d 956 (3d Cir. 1983) ........................................................................................................................... 12

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) .................................................................. 13

*West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710 (S.D.N.Y. 1970) .................................... 14

*Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. 2016) .................. 15

## STATUTES

Class Action Fairness Act, 28 U.S.C. §1715(b) ............................................................................ 1

Federal Rule of Civil Procedure 23 ………………………………………….…………7

Federal Rule of Civil Procedure 23(a)(1) ……………………………………….……….. 8

Federal Rule of Civil Procedure 23(a)(2) ……………………………………………….8, 9

Federal Rule of Civil Procedure 23(a)(3) ……………………………………….……….9

Federal Rule of Civil Procedure 23(a)(4) …………………………………………..…….10

Federal Rule of Civil Procedure 23(b)(3) ……………………………………….………10, 12

Telephone Consumer Protection Act, 47 U.S.C. § 227 ................................ 3, 9, 10, 11, 15, 16, 18

## OTHER AUTHORITIES

H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009)............... 11

MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004) .............................................. 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ELI ASHKENAZI, individually and on behalf of all others similarly situated, | : : | CIVIL ACTION |
| | : | NO. 3:15-cv-02705-PGS-DEA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BLOOMINGDALES, INC., | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT

Plaintiff Eli Ashkenazi ("Plaintiff"), individually, and as representative of the class of persons defined below in Paragraph 3(a) ("Settlement Class"), requests that this Court enter an order granting Final Approval to the Class Settlement Agreement ("Agreement") with Defendant, Bloomingdale's, Inc. ("Defendant"), filed as Dkt. No. 44-2 and attached hereto as Exhibit 1, award Class Plaintiff a reasonable incentive award, and award Class Counsel reasonable attorneys' fees in the amount of thirty percent (30%) of the Settlement Fund, plus Class Counsel's costs and expenses, as set forth in Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award to Class Representative, which was filed contemporaneously with this Motion.

On July 18, 2018, Defendant sent notice of the class settlement pursuant to the Class Action Fairness Act, 28 U.S.C. §1715(b) to the appropriate officials, providing them more than 90 days' notice before the final approval hearing scheduled to be held on December 5, 2018 . *See* Declaration of Orlando Castillejos re: Notice Procedures, ¶¶ 13-16, attached hereto as Exhibit 2 ("Castillejos Decl."). On July 17, 2018, the Court granted preliminary approval of the Settlement. Dkt. No. 46. The Court's order granting preliminary approval was subsequently amended to adjust

certain dates and deadlines contained therein.  Dkt. No. 49.  Per the Court-approved notice plan, direct individual notice of the Settlement was disseminated to 47,905 Class Members.  *See* Castillejos Decl., Exhibit 2 at ¶¶ 2-8.  A state-of-the-art, user-friendly claims process allowed Class members to file claims through a simple claim form, which could be submitted either by U.S. mail, by electronic mail, or by internet submission.  A toll-free phone number was provided in the notice to provide information to the Class Members. *Id*. at ¶ 9.  On November 21, 2018, Plaintiff filed his Motion for Attorneys' Fees, Expenses, and Incentive Award to Class Representative.

To date 2,955 persons have submitted valid claims forms, while only two persons excluded themselves from the class, and no one objected.  *Id*. at ¶¶ 10-12.  Plaintiff respectfully submits that the lack of any objectors and the very small number exclusions speaks to the effectiveness of the notice plan, and the ease and efficiency of the claims administration plan negotiated by Class counsel.

The claim rate is 6.06% of the universe of potential class members, a strong result for cases of this nature.  The overwhelmingly positive reaction from Class Members also underscores the value the Class places on the Settlement obtained.  Defendant created a class settlement fund of $1,400,000, consisting of a $750,000 cash settlement fund and a $650,000 voucher settlement fund, out of which claiming Class Members will be paid.  Upon final approval, the Class Administrator will distribute to each Class Member, based upon each Class Member's choice as reflected in the claim form he or she submitted, either a $25.00 cash payment or a $50.00 product voucher.  The vouchers will be redeemable at full value when purchasing any of Defendant's products, subject to any applicable laws.  Plaintiff respectfully submits this is a very good result for the Class, particularly in view of the risks and delays involved in litigating the substantive

merits of these claims, and the difficulties inherent in pursuing these claims individually for the overwhelming majority, if not all, of the Class Members.

For the foregoing reasons, and as detailed below, the Settlement meets the standards for final approval, and should therefore be approved.

## I.      NATURE OF THE LITIGATION

Plaintiff filed a class action Complaint on April 16, 2015 (Dkt. No. 1) and a First Amended Complaint on June 26, 2015 (Dkt. No. 12).  In the First Amended Complaint, Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA"), by sending text messages to the Class Members without first obtaining their express consent.

The Parties proceeded to conduct extensive written discovery and several depositions.  On December 30, 2016, Defendant filed its Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 34).  Defendant's Motion to Dismiss was in part based upon this Court's decision in *Susinno v. Work Out World, Inc.*, 2017 WL 5798643 (D.N.J. No. 15-cv-5881, Nov. 28, 2017).  On January 20, 2017, by request of the Parties, a Consent Order was entered by Honorable Magistrate Judge Douglas E. Arpert, staying all proceedings in this case pending the United States Court of Appeals for the Third Circuit's resolution of the appeal of this Court's decision in *Susinno*, the outcome of which the Parties believed would directly impact this case (Dkt. No. 35).

On July 10, 2017, the Third Circuit Court of Appeals filed its decision in *Susinno*, 823 F.3d 346 (3rd Cir. 2017).  The parties discussed the impact of the *Susinno* decision on this case and on August 24, 2017, Magistrate Judge Arpert, by request of the Parties, entered a Consent Order lifting the stay of proceedings and reinstating this case to the Court's active docket (Dkt. No. 37).  On October 4, 2017, the Parties notified Magistrate Judge Arpert that they had agreed to conduct a mediation before the Honorable Stephen M. Orlofsky on December 19, 2017.  On October 6,

2017, Magistrate Judge Arpert entered a Letter Order administratively terminating this action while the Parties were in mediation (Dkt. No. 40).

Counsel for the Parties have investigated and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.  Based upon counsels' review and analysis, and with the assistance of Judge Orlofsky, the Parties have entered into a Settlement Agreement (the "Agreement").

## II.      NATURE OF SETTLEMENT

1.      <u>Settlement Class Certification</u>.   The settlement details are contained in the Agreement, which is attached hereto as Exhibit 1.  The following summarizes the Agreement's terms:

The Parties have stipulated to certification of the following class for settlement purposes only.

> All persons who, upon signing up for Bloomingdale's customer loyalty program known as "Loyallist" between August 24, 2014 and May 16, 2015, were sent a text message successfully transmitted from the short code 256-66 reading "Bloomingdale's Promo Alerts: Reply Y now to confirm you want texts! Reply HELP for help. 1 msg/wk. MSG&Data Rates May Apply. Q's 800-777-0000".

2.      During discovery, the Parties undertook extensive efforts to determine the number of individuals who received the text message at issue and the relevant time frame during which those text messages were sent as a result of a Loyallist signup.  Based upon the information uncovered during written discovery and depositions, the Parties agreed to a notice plan that would

provide direct notice to 47,905 individuals who received the text message at issue during the relevant time frame as a result of a Loyallist signup. *See* Exhibit 1, ¶ 12.

      (a)    <u>Settlement Class Recovery</u>.  Defendant created a class settlement fund of $1,400,000 (the "Class Recovery") – consisting of a $750,000 cash settlement fund and a $650,000 voucher settlement fund – which the Class Administrator, KCC Class Action Services, LLC ("KCC"; the "Class Administrator") will distribute among those Settlement Class Members who submitted valid claims, and who did not exclude themselves from the Settlement (the "Claimants").  Each Settlement Class Member who submitted a valid claim has been allowed to choose between either a $25.00 cash payment or a $50.00 product voucher.  The vouchers will be redeemable at full value when purchasing any of Defendant's products, subject to any applicable laws.  *See* Exhibit 1, ¶¶ 14.4.3-14.4.5. Claimants who choose to receive the cash payment will receive a check, which will be void one hundred and eighty (180) days from the date it is issued.  *See* Exhibit 1, ¶¶ 14.4.1-14.4.2.

      (b)    <u>Relief to Plaintiff</u>.  Plaintiff has moved for a service award of $10,000, as set forth in his Motion for Attorneys' Fees, Expenses, and Incentive Award to Class Representative, filed on November 21, 2018.  The class notice explicitly set forth this request and no class member objected.  *See* Exhibit 1, ¶¶ 14.1.1 and 15.2.

      (c)    <u>Attorneys' Fees and Costs</u>.  Plaintiff has moved for an award of attorney's fees to be paid to Class Counsel from the Cash Settlement Fund in the amount of thirty percent (30%) of the total $1,400,000 value of the Settlement Fund ($420,000), plus reimbursement of Class Counsels' costs and expenses, as set forth in the Motion for Attorneys' Fees, Expenses, and Incentive Award to Class Representative, filed on

November 21, 2018.  The class notice set forth this request and no class member objected. *See* Castillejos Dec., Exhibit 2 at ¶ 12.

(d)     <u>Settlement Class Notice</u>.  As noted above, KCC sent the class notice to the list of individuals who received the text message at issue, during the relevant time frame, as a result of a Loyallist signup.  *Id*. at ¶¶ 2-8.

(e)     <u>Limited Release</u>.  The class release in this case is limited to claims that arise out of or are related to the matters alleged in the First Amended Complaint regarding the text messages that are the subject of this Action and the alleged violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, or any law in sending any such text messages.

(f)     <u>Cy Pres</u>.  Any cash remaining in the Cash Settlement Fund – after payment of all Claims of Class Members, the Class Counsel Fees and Expense Award, as approved by the Court, the Incentive Awards to the Class Representative, as approved by the Court, and the Administrative Fee of the Settlement Administrator, as approved by the Court – shall be donated by *cy pres* award to the Community Food Bank of New Jersey, subject to Court approval.  This includes funds paid to any Settlement Class Members whose cash benefit checks have not cleared within one hundred eighty (180) days after issuance.  *See* Exhibit 1, ¶¶ 14.8-14.9.

## III.     THE PROPOSED CLASS SATISFIES FED. R. CIV. P. 23.

When the Court preliminarily approved this settlement, it considered whether the Settlement class could be conditionally certified for settlement purposes. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).

6

During the pendency of the case Defendant also disclosed information relevant to the requirements of Fed. R. Civ. P. 23, including the size of the putative class, which the Parties have relied upon in reaching the Agreement and in bringing this motion.  In considering the proposed settlement, the first question for the Court is whether a settlement class may be conditionally certified for settlement purposes.  *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (*en banc*) ("[B]efore approving a class settlement agreement, a district court first must determine that the requirements for class certification under Rule 23(a) and (b) are met." (internal quotation marks omitted)); *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 300 (3d Cir. 2005) ("[R]egardless of whether a district court certifies a class for trial or for settlement, it must first find that the class satisfies all the requirements of Rule 23.").

This Court initially found that the proposed Agreement meets all of the requirements of Rule 23 when it entered the order preliminarily approving the Agreement and the class notice process has confirmed that finding.

A.    **Numerosity**

To determine the approximate size of the Settlement Class, Plaintiff reviewed lists of all promotional text messages sent by Defendant during a period in excess of the time frame referenced in the Settlement Class definition.  The time frame was narrowed based upon information obtained during the deposition of two of Defendant's Fed. R. Civ. P. 30(b)(6) witnesses.  Plaintiff's expert witness, Jeffrey Hansen ("Hansen"), then filtered the list of messages to narrow them based on the shorter time frame and the specific wording of the text message at issue.  Based upon the results of Hansen's analysis and further discussions between the parties at their mediation session, the parties determined the size of the Settlement Class to be 47,905 individuals.

The size of the Settlement Class easily satisfies the numerosity requirement of Rule 23(a)(1).  The first requirement of Rule 23(a) is that the class members be so numerous that joinder is not practicable.  "Numerosity requires a finding that joinder of all members is impracticable." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 182 (3d Cir. 2001); *In re Bulk (Extruded) Graphite Products Antitrust Litig.,* No. Civ. 02–6030 (WHW), 2006 WL 891362 at *5, (D.N.J. April 4, 2006) (Numerosity satisfied where traditional joinder of parties would be "unworkable").  Generally, if the "potential number of plaintiffs exceed 40, the [numerosity] prong of Rule 23(a) has been met." *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001).  In the case at bar, the Proposed Class includes members totaling well over one thousand times the number found to be sufficient by the Third Circuit Court of Appeals in *Stewart*. It is unworkable for the members of a proposed class this large to be joined together in the same proceeding.  As a result, the numerosity requirement is satisfied.

## B.    Commonality

Satisfaction of the commonality requirement under Rule 23(a)(2) requires that Plaintiff demonstrate his claims "depend upon a common contention," the resolution of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011).  "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 183 (3d Cir. 2001) (internal quotation marks omitted); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597-98 (3d Cir. 2012). As this Circuit reiterated recently, "that bar is not a high one. We have acknowledged commonality to be present even when not all plaintiffs suffered an actual injury, id., when plaintiffs did not bring identical claims, … and, most dramatically, when some plaintiffs' claims may not have been legally

viable, … In reaching those conclusions, we explained that the focus of the commonality inquiry is not on the strength of each plaintiff's claim, but instead is "on whether the defendant's conduct was common as to all of the class members." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382-83 (3d Cir. 2013) (citations omitted) (reviewing commonality standard in light of *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), and concluding that while "Dukes is an intervening and pointedly clear explication of the law, it did not announce any change in the test for determining commonality." *Rodriguez*, 726 F.3d at 381, n. 2).

The primary questions, which focus on the uniform conduct and procedures of the Defendant, are common to the Class.  The Settlement Class members have identical legal claims based upon a specific text message sent by Defendant to Plaintiff and each Settlement Class member.

## C.     Typicality

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re: Prudential Ins. Co. of America Sales Litigation,* 148 F.3d 283, 311 (3d Cir. 1998).  The "typicality" requirement of Rule 23(a)(3) is satisfied for the reasons that the "commonality" requirement of Rule 23(a)(2) is met. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998).  To conduct the typicality inquiry, the court must examine "whether the named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295–96 (3d Cir. 2006).  Here, Plaintiff's claims share the same common issues of fact and law as those held by the Settlement Class members – namely, Defendant sent an identical text message to Plaintiff and the Settlement Class members which was allegedly in violation of the TCPA.  Plaintiff, as a member of the Settlement Class, has

the same interest in resolution of the issues as all other members of the Class.  Plaintiff's claims are typical of the claims of all members of the Class.  In the present matter, the typicality requirement is satisfied.

### D.    Adequacy of Representation

Plaintiff's counsel is experienced in class action and TCPA litigation.  In addition, Plaintiff has no interests which are antagonistic to the Settlement Class members.  Therefore, Plaintiff and his counsel satisfy the adequacy of representation requirement embodied in Rule 23(a)(4). The Declarations of Ross Schmierer, Ari Marcus, and Todd Friedman were attached both to the Motion for Preliminary Approval of Class Action Settlement as well as the Motion for Attorneys' Fees, Expenses, and Incentive Award to Class Representative, filed on November 21, 2018, at Dkt. Nos. 44-3, 44-4, 44-5, and the Motion for Attorneys' Fees filed contemporaneously herewith. These declarations outline their qualifications to serve as Class Counsel.

### E.    Predominance and Superiority

In addition to meeting the requirements of Rule 23(a), a money-damages class must satisfy Rule 23(b)(3), namely that (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and, (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed R. Civ. P. 23(b)(3).  Both of these requirements are satisfied in the present case.

#### 1.    Common Questions of Law and Fact Predominate Over Individual Ones.

Resolution of the common issues of fact and law in this case will not only promote the efficient adjudication of these matters, it will dispose of them entirely.  Allowing this case to proceed as a class action would be an efficient means of resolving the claims at issue, where

there are thousands of members of the Proposed Class, and each member possesses a claim based on receipt of the same text message sent to them by the Defendant. Plaintiff alleges on behalf of the Class that the sending of those text messages – the factual issues central to Plaintiff's claim which are generally common to all members of the Settlement Class – is a violation of the TCPA as a matter of law. This legal question is common to all members of the Settlement Class.

### 2. A Class Action is the Superior Method for Resolving the Class Claims.

As to superiority, class settlement is the most efficient means of adjudicating the disputes raised here. Aggregating all possible TCPA claims based on Defendant's text message practices will eliminate the potential for "repetitious litigation" and "inconsistent adjudications" if the claims were brought separately, and which otherwise "might stand in the way of a beneficial comprehensive settlement." *See D'Alauro v. GC Services Ltd. P'ship,* 168 F.R.D. 451, 458 (E.D.N.Y. 1996). Separately litigating the common issues that bind the Settlement Class would be a practical impossibility, even assuming all consumers had notice of their claims and it was economically feasible to pursue these claims on their own. Where the alternative to a class action is likely to be no action at all for most of the class members, there is strong presumption in favor of a finding of superiority. *Cavin v. Home Loan Ct., Inc.* 236, F.R.D. 387, 396 (N.D. Ill. 2006).

## IV.   FINAL APPROVAL SHOULD BE GRANTED

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 436, 439-40 (E.D. Pa. 2002).

Preliminary approval is the first of essentially three steps that comprise the approval procedure for settlement of a class action.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a settlement approval or final fairness hearing.  *See* MANUAL FOR COMPLEX LITIGATION 4TH, § 21.63 (2004), available at http://www.fjc.gov ("MANUAL").  While a settlement class must satisfy each of the requirements of Rule 23(a) and Rule 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule."  *In re Prudential,* 148 F.3d at 308-09.

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation…

*Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975); *In re Prudential*, 148 F.3d at 317; *In re Rite Aid Corporation Sec. Litig.*, 269 F.Supp.2d 603, 607 (E.D. Pa. 2003), 362 F. Supp.2d 587 (E.D. Pa. 2005) (on remand).

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court.  Of course, settlements of class actions are favored in the law.  *See In re General Motors Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

This Court is now asked to ascertain whether the proposed settlement is within a "range of reasonableness" which experienced attorneys could accept in light of the relevant risks of the litigation.  S*ee Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d

956 (3d Cir. 1983).  In determining what falls within this range, the Court should bear in mind "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion…."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

This determination is made only after notice of the settlement has been given to the members of the class and after they have been given an opportunity to voice their views of the settlement or be excluded from the class.  *See In re Linerboard Litig.*, 296 F. Supp. 2d 568, 577-78 (E.D. Pa. 2003) (citing factors established in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). As noted above, no class member has objected to any portion of the class settlement, only two class members have sought exclusion, and over 2,900 class members have submitted valid claims.

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *Collier v. Montgomery County*, 192 F.R.D. 176, 184 (E.D. Pa. 2000) (citing factors established in *Girsh*, *supra)*. Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See Collier*, 192 F.R.D. at 186; *Fisher Bros. v. Cambridge-Lee Indus., Inc*., 630 F. Supp. 482, 487-88 (E.D. Pa. 1985).

Here, experienced counsel firmly believes that the settlement, as structured and contemplated by the parties, represents an eminently reasonable resolution of the dispute. An evaluation of the relevant factors demonstrates that the Settlement fits well within the range of reasonableness and should be approved.

**A.**   **The Complexity, Expense, and Likely Duration of the Litigation; the Risk of Establishing Liability; and the Risk of Maintaining the Class Action Through Trial and Beyond**

Absent the settlement, the Court would be required to rule on the many issues likely to be raised in this litigation including class certification and summary judgment. While Plaintiff believes it would prevail on all issues, there is at least some risk it would not.  Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties. *See In re Gen Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense). There is substantial risk that any victory at trial would be hollow, leaving class members with nothing if Defendant successfully appealed.  *See West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd,* 440 F.2d 1079 (2d Cir. 1971); *see also Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).  In contrast, the settlement makes substantial monetary relief available to the Class Members in a prompt and efficient manner.

**B.**   **The Reaction of the Class to the Settlement**

As set forth above, notice has been directly emailed and/or mailed to the members of the Settlement Class, advising them of the terms of the Settlement and their right to object or exclude themselves from the Class.  The deadline for both was October 8, 2018.  Not a single class member objected to the settlement and only two class members excluded themselves from the settlement. This is convincing evidence of the proposed settlement's fairness and adequacy.  *See In re Rite*

14

*Aid Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (agreeing with the district court that two objections out of 300,000 class members was a "rare phenomenon").

### C. The Stage of the Proceedings and the Amount of Discovery Completed

This lawsuit was filed in April 2015 and has seen substantial motion practice.  In addition, the parties conducted extensive written discovery and depositions, and Plaintiff retained and disclosed an expert witness.  The information obtained by the parties throughout the litigation was sufficient for the parties to adequately assess the settlement's fairness.  As a result of the parties' efforts, the litigation had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases."  *Bonett v. Educ. Debt Servs., Inc.*, 2003 WL 21658267, at *6 (E.D. Pa. 2003) (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)).

### D. The Range of Reasonableness of the Settlement to a Possible Recovery in Light of All the Attendant Risks of Litigation

The expected recovery for the class – the choice of either a $25.00 cash payment or a $50.00 product voucher – meets or exceeds many other TCPA class settlements.  *See  Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (settlement amount favored final approval, where claims rate resulted in *pro rata* payment of approximately $13.75 per class member); *Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) (final approval for up to $15 for each claimant); *Garret v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *Hashw v. Dep't Stores Nat'l Bank*, 2016 U.S. Dist. LEXIS 61004 (D. Minn. 2016) (finally approving settlement where "each claimant will

15

receive approximately $33.20."); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each claimant would be awarded $39.66); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016) (finally approving "$45.00 recovery per claimant"); *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 at *4 and *11-12 (N.D. Cal. Mar. 31, 2014) ($46.98 to each claimant).

Thus, the amount each Settlement Class member shall receive is fair, reasonable, and adequate, given the purposes of the TCPA and the risk, expense, and uncertainty of continued litigation. *See Hashw,* 2016 U.S. Dist. LEXIS 61004 at *13 ("Given that victory was by no means certain and even if achieved, victory likely would have been a lengthy and costly affair for class members (as the TCPA includes no fee-shifting provision), in the Court's view an immediate, definite payment of $33.20 is both reasonable and fair."); *In re Gen. Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

### E. The Release is Narrowly Tailored to the Claim Brought

Finally, the release in this case is narrow in that it is limited to the sending of one specific text message.  Specifically the release provides:

> Upon the Effective Date, and in consideration of the promises and covenants set forth in this Agreement, the Representative Plaintiff and each Settlement Class Member, each of their respective executors, representatives, guardians, wards, heirs, estates, bankruptcy estates, bankruptcy trustees, successors, predecessors, guardians, wards, joint tenants, tenants in common, tenants by the entirety, co-borrowers, co-obligors, co-debtors, attorneys, partners, agents and assigns, and anyone who regularly used, subscribed to, was authorized to use, or was in any way responsible for a cellular phone account or cellular phone number which received

the text messages that are the subject of the Action, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including bankruptcy trustees in the capacity as parens patriae or on behalf of creditors or estates of the Representative Plaintiff or Class Members) ("Releasing Parties"), will be deemed to have completely released and forever discharged Defendant and each of its past and present officers, directors, shareholders, trustees, beneficiaries, members, partners, employees, predecessors, successors in interest, attorneys, agents, assigns, owners, subsidiaries, parent companies, affiliates, vendors, service providers, accountants and representatives ("Released Parties") from any and all claims, demands, rights, duties, obligations, actions, suits, liabilities, or causes of action, whether class, individual, or otherwise in nature, or whether arising under local, state, or federal law, or whether by Constitution, statute, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, arising out of or relating in any way to the facts, occurrences, transactions, or other matters alleged in the First Amended Complaint regarding the text messages that are the subject of the Action and the alleged violation of the TCPA or any law in sending any such text messages that are the subject of the Action, through the Effective Date of this Agreement (the "Released Claims").

*See* Exhibit 1, at p. 12-13 ¶ 16.1.

## V.    CY PRES

Any cash remaining in the Cash Settlement Fund – after payment of all Claims of Class Members, the Class Counsel Fees and Expense Award, as approved by the Court, the Incentive Awards to the Class Representative, as approved by the Court, and the Administrative Fee of the Settlement Administrator, as approved by the Court – shall be donated by *cy pres* award to the Community Food Bank of New Jersey ("CFBNJ"), subject to Court approval.  This includes funds paid to any Settlement Class Members whose cash benefit checks have not cleared within one hundred eighty (180) days after issuance.  See Exhibit 1, ¶¶ 14.8-14.9.

CFBNJ is New Jersey's largest anti-hunger and anti-poverty organization.  According to CFBNJ:

17

More than 900,000 people in New Jersey face hunger every day. Nearly 270,000 of them are children. When they don't have enough food to eat, they can suffer direct and dramatic effects on their physical development and mental well being.

Food insecurity exists in every county across the United States, from the poorest neighborhoods to the most affluent. Parents skip meals so they can feed their children, seniors choose between buying medicine and food, and students decide between their education and food.

Working together with volunteers, donors and our many partners, we fill the emptiness caused by hunger with Food, Help and Hope.

*See* http://www.cfbnj.org/the-problem.

## VI.   APPROVAL OF SERVICE AWARD AND ATTORNEY FEES

Unlike many consumer protection statutes, the TCPA does not contain an attorney fee shifting provision.  As such, Class Counsel is entitled to recover attorney fees from the common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749, 62 L. Ed. 2d 676 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.")

Calculating attorneys' fees in class actions based on a common fund is favored because it rewards counsel for success and penalizes counsel for waste or failure, even in cases where there is a fee shifting provision.  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

On November 21, 2018, Plaintiff filed his Motion for Attorneys' Fees, Expenses, and Incentive Award to Class Representative setting forth the legal and factual basis for both.  In addition, the class notice provided:

Bloomingdale's will pay the total amount of $1,400,000, consisting of $750,000 in cash and $650,000 in voucher value, into the Settlement Fund, which will cover: (1) cash payments on a pro rata basis up to $25 to Settlement Class Members who submit timely and valid Claim Forms and elect this benefit; (2) voucher payments on a pro rata basis up to $50 to Settlement Class Members who submit timely and valid Claim Forms and elect this benefit; (3) an award of attorneys' fees and costs to Class Counsel, in an amount not to exceed $420,000 (30%) of the Settlement Fund, plus actual litigation expenses not to exceed $30,000, as approved by the

18

Court; (4) a service award to Plaintiff, in an amount not to exceed $10,000, as approved by the Court; (5) the costs of notice and administration of the Settlement; and (6) if there are any uncashed checks or if any money is remaining in the Cash Settlement Fund after distribution of the cash payments to those who submitted timely and valid Claim Forms, a charitable contribution, which must also be approved by the Court.

*See* Exhibit 2, at its Exhibit A, p. 3.

Not a single class member objected to Plaintiff's service award or Class Counsel's request for attorneys' fees in an amount not to exceed $420,000, or thirty percent (30%) of the Settlement Fund, plus actual litigation expenses not to exceed $30,000. *Id.* at ¶ 12. As numerous district courts have held, the dearth of objections "strongly supports approval of the requested fee." *In re Flonase Antitrust Litig.*, No. 08-cv-3149, 2013 WL 2915606, at *7 (E.D. Pa. June 14, 2013); *see also In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *6 (finding the "lack of objections to the requested attorneys' fees supports the request"); *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821, at *5 (recognizing as significant that "not one member of the class ha[d] filed an objection to the settlement" despite the fact that notice was mailed to 35,360 class members).

For the reasons set forth in Plaintiff's motion for attorney fees and service award, Plaintiff submits that he and class counsel conferred a real benefit to the class. Therefore, a $10,000 service award to Plaintiff,[1] an award of attorneys' fees in an amount not to exceed $420,000, or thirty percent (30%) of the Settlement Fund, and an award of actual litigation expenses not to exceed $30,000, is fair and reasonable.

---

[1] This award is well within the range of awards made in consumer cases in this Circuit. *See Sapp v. Experian Info. Sols. Inc.*, 2013 WL 2130956, at *3 (awarding $15,000 to class representative in FCRA settlement); *Giddiens v. LexisNexis Risk Solutions, Inc.*, C.A. No. 12-2624-LDD (E.D. Pa. Jan. 20, 2015) (Doc. 55) (final approval order awarding $10,000 individual settlement to class representative in FCRA case); *Robinson v. Gen. Info. Servs., Inc.*, No. 2:11-cv-07782-PBT (E.D. Pa. Nov. 4, 2014) (Doc. 55) (same).

## VII.   CONCLUSION

Accordingly, the Parties request that this Court grant Final approval of the Settlement Agreement and enter the proposed order attached as Exhibit 3.

Respectfully submitted this 21st day of November, 2018.

_s/ Ari H.  Marcus_
Ari H. Marcus, Esq.
MARCUS & ZELMAN, LLC
1500 Allaire Avenue, Suite 101
Ocean, New Jersey 07712
Telephone:  (732) 695-3282
Facsimile:  (732) 298-6256
Email:  Ari@MarcusZelman.com

Stephen DeNittis, Esq.
Ross H. Schmierer, Esq.
DeNITTIS OSEFCHEN PRINCE, P.C.
525 Route 73 North, Suite 410
Marlton, New Jersey 08053
Telephone:  (856) 797-9978
Facsimile:  (856) 797-9951
Email: sdenittis@denittislaw.com
        rschmierer@denittislaw.com

Todd M. Friedman, Esq.
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
Email:  tfriedman@attorneysforconsumers.com

David B. Levin
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
333 Skokie Blvd., Suite 103
Northbrook, IL 60062
Telephone: (224) 218-0882
Facsimile: (866) 633-0228
Email: dlevin@toddflaw.com

_Attorneys for Plaintiff_