**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ELI ASHKENAZI, individually and on behalf of all others similarly situated, | : | CIVIL ACTION |
| | : | |
| | : | NO. 3:15-cv-02705-PGS-DEA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BLOOMINGDALE'S, INC., | : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARD TO CLASS
<u>REPRESENTATIVE</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES…………………………………………………………..… ii-iv

I.       NATURE OF THE LITIGATION……………………………………………………….. 1

II.      NATURE OF SETTLEMENT……………………………………………………............2

III.     CLASS COUNSELS' FEE REQUEST SHOULD BE APPROVED AS FAIR AND
         REASONBALE………………………………………………………………………...3

         A.       The Percentage of the Fund Method Should Be Applied Here………..………..3

         B.       The Fee Requested Under A Percentage of Recovery Analysis……………………4

                  1.       The Benefit to the Class Members From the $1,400,000 Common Fund
                           Created Supports the Fee Request…………………………..…………....5

                  2.       The Presence or Absence of Substantial Objections by Members of the
                           Class  to  the  Settlement  Terms  and/or  Fees  Requested  by
                           Counsel…………………………………………………………….........6

                  3.       The Skill and Efficiency of the Attorneys Involved………………………7

                  4.       The Complexity and Duration of the Litigation…………………………..9

                  5.       The Risk of Nonpayment…………………………………………………..9

                  6.       The Amount of the Time Devoted to the Litigation by Class Counsel…..10

                  7.       Awards in Similar Cases…………………………………………………11

         C.       A  Lodestar  Cross  Check  Confirms  That  the  Requested  Fee  Award  is
                  Reasonable…………..………………………………………………..……….13

IV.      EXPENSES………………………………………..………………………………..15

V.       SERVICE AWARD……………………………………………………………….....16

VI.      CONCLUSION……………………………………………………………………...17

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Adams v. AllanceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. 2012)...................................................................................................................... 5

*Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559 (WD Wash 2012) ............................................. 10

*Am Copper & Brass, Inc. v. Lake City Indus. Prod. Inc.,* No. 09cv1162, 2016 WL 6272094 (WED Mich. 2016)............................................................................................................................. 16

*Barel v. Bank of Am.,* 255 F.R.D. 393 (ED Pa. 2009) .................................................................. 7

*Blum v. Stenson,* 465 U.S. 866, 900 (1974) ................................................................................. 3

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .......................................................................... 3

*Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015)............................................... 5

*Dobkin v. NRG Residential Solar Solutions*, No. 15cv5089 (DNJ 2018)..................................... 12

*Fitzgerald v. Gann Law Books,* 2014 U.S. Dist. LEXIS 174567 (DNJ) ...................................... 13

*Garret, et al. v. Sharps Compliance, Inc.,* No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. 2012) ........ 5

*Goldberger v. Integrated Res., Inc.* 209 F.3d 43 (2d Cir. 2000)..................................................... 4

*Green v. Service Master,* 2009 WL 1810769 (N.D. Ill 2009) ...................................................... 10

*Gunter v. Ridgewood Energy Corp.,* 223 F.3d 19 (3d Cir. 2000).................................................... 4

*Hageman v. AT&T Mobility LLC,* No. 13cv50, 2015 WL 9855925 (D. Mont. 2015) ................. 16

*Ikuseghan v. Multicare Health Sys.,* No. 14cv5539, 2016 WL 4363198 (WD Wash. 2016)....... 16

*In re Capital One TCPA Litigation,* 12-cv-10064 (MDL No. 2416) (ND Ill. 2015).................. 5, 9

*In re Cendent Corp. PRIDES Litig.,* 243 F.3d 722 (3d Cir. 2001) .......................................... 4, 13

*In re Flonase Antitrust Litig.*, No. 08-cv-3149, 2013 WL 2915606 (E.D. Pa. June 14, 2013)....... 7

*In re Ikon Office Solutions v. Stuart,* 194 F.R.D. 166 (ED Pa. 2000)............................................. 7

*In re Janney Montgomery Scott LLC Fin. Consultant Litig,* WL 2137224 (ED Pa 2004) ............. 8

*In re Linerboard Litig.*, 296 F. Supp.2d 568 (E.D. Pa. 2003)........................................................ 8

*In re Merck & Co., Inc. Vytorin ERISA Litig.,* 2010 WL 547613 ......................................... 11, 14

*In re Philips/Magnavox Television Litig.,* 2012 WL 1677244 (DNJ) ........................................... 9

*In re Rite Aid Corporation Securities Litig.*, 269 F.Supp.2d 603, (E.D. Pa. 2003), 362 F. Supp.2d 587 (E.D. Pa. 2005)...................................................................................................... 4, 13, 15

*In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012)…………………………………………………………………….................7

*In re: Prudential Ins. Co. of America Sales Litigation*, 148 F.3d 283 (3d Cir. 1998)……………4

*Keonig v. United States Bank, NA,* 291 F.3d 1035, 1038 (8th Cir. 2002)…………..……………15

*Landsman & Funk PC v. Skinder-Strauss Assocs.,* No. 08cv3610, 2015 WL 2383358 (DNJ 2015) .................................................................................................................... 16

*Lees v. Anthem Ins. Companies Inc.,* No. 13cv1411, 2015 WL 3645208 (ED Mo. 2015).......... 16

*Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038 (S.D. Cal. 2016) ............................................................................................................................... 5

*Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821 (E.D. Pa. Jan. 24, 2011) ................ 7

*Rose v. Bank of Am. Corp.*, U.S. Dist. LEXIS 121641, 2014 WL 4273358 (ND Cal. 2014)....... 14

*Spillman v. RPM Pizza, LLC,* 2013 U.S. Dist. LEXIS 72947 (MD La. 2013) .............................. 5

*Spokeo v. Robins, 578 U.S. _____, 2016* .............................................................................. 2

*Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ........ 6

*Versteeg v. Bennett, Deloney & Noyes, PC,* 271 F.R.D. 688 (D. Wyo 2011) ............................. 10

*Vigus v. Southern Ill. Riverboat Casino Cruises, Inc.* 274 F.R.D. 229 (SD Ill 2011) .................. 9

*Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. 2016) .................... 6

**OTHER AUTHORITIES**

H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) .............. 14

Plaintiff Eli Ashkenazi ("Plaintiff"), individually, and as representative of the class of persons defined below in Paragraph 3(a) ("Settlement Class"), requests that this Court enter a service award to Plaintiff in the amount of $10,000 and an award of attorney fees of thirty percent ($420,000) of the $1,400,000 common fund plus reimbursement of Class Counsel's reasonable costs and expenses not to exceed $30,000.

## I.  NATURE OF THE LITIGATION

Plaintiff filed a class action Complaint on April 16, 2015 (ECF No. 1), and a First Amended Complaint on June 26, 2015 (ECF No. 12). In Plaintiff's Amended Complaint, Plaintiff alleges that Bloomingdale's Inc. ("Bloomingdale's" or "Defendant") violated the Telephone Consumer Protection Act, 47 U.S.C. §§227, *et seq.* ("TCPA"), by sending unsolicited text advertisements.

On July 24, 2015, Defendant filed an Answer to the Amended Complaint (ECF No. 14), denying all liability. On September 19, 2015, the parties attended an Initial Conference before the Honorable Judge Douglas Arpert. Shortly thereafter, the parties began engaging in formal discovery. Discovery included written interrogatories, document demands, requests for admissions, voluminous responses, several rounds of depositions of the parties at issue and third parties, expert reports, and depositions of experts.

On December 30, 2016, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, relying in part on the Supreme Court's decision in *Spokeo v. Robins,* 578 U.S. _____, 2016. Prior to oral argument, the parties agreed to stay this matter pending a Third Circuit Court of Appeal case that was directly on point (ECF No. 35). On July 17, 2017 a decision was rendered which would have forced the parties to either supplement their briefing or

1

re-file a new Motion to Dismiss. Prior to that occurring, the parties sought and were granted leave to stay this matter, so the parties can participate in mediation.

Mediation took place on December 19, 2017 with the assistance of the Hon. Stephen M. Orlofsky (Ret.). Prior to the mediation, Plaintiff had all the relevant discovery to file a class certification Motion, including class size, as well as a keen understanding of the strengths and potential weaknesses and pitfalls of Plaintiff's claims. After spending over eight hours together, throughout which the parties engaged in extensive arms-length settlement, the parties ultimately culminated in an agreement to settle the claims of Plaintiff and Settlement Class, with the blessing of the mediator. Shortly thereafter, the parties formalized the settlement in a fully executed Settlement Agreement (ECF No. 44 #2).

## II.   NATURE OF SETTLEMENT

Pursuant to the Agreement, Bloomingdale's will create a class settlement fund of $1,400,000.00 ("Class Recovery"), which the Class Administrator, Kurtzman Carson Consultants ("KCC") ("Class Administrator") will distribute among those Settlement Class Members who submit valid claims. The class settlement fund will consist of a cash portion of $750,000 and voucher portion of $650,000. Class members will have the option of accepting a payment up to $25.00 in cash or a voucher redeemable at $50.00 that can be used when purchasing any product at  Bloomingdale's.

On July 17, 2018, this Court granted preliminary approval of this Settlement and conditionally certified the Settlement Class of

> All persons who, upon signing up for Bloomingdale's customer loyalty program known as "Loyallist" between August 24, 2014 and May 16, 2015, were sent a successfully transmitted text message from the short code 256-66 reading "Bloomingdale's Promo Alerts: Reply Y now to confirm you want texts! Reply HELP for help. 1 msg/wk. MSG&Data Rates May Apply, Q's 800-777-0000."

ECF 46.

## III.    CLASS COUNSELS' FEE REQUEST SHOULD BE APPROVED AS FAIR AND REASONABLE

Federal Rule of Civil Procedure 23(h) provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

### A.    The Percentage of the Fund Method Should Be Applied Here.

Unlike many consumer protection statutes, the TCPA does not contain an attorney fee shifting provision.  As such, Class Counsel is entitled to recover attorney fees from the common fund.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749, 62 L. Ed. 2d 676 (1980)("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.")

In 1984, the Supreme Court observed that "[i]n the calculation of attorney's fees under the 'common fund doctrine,' … a reasonable fee is based on a percentage of the value or benefit bestowed on the class." *Blum v. Stenson*, 465 U.S. 866, 900 n.16 (1974). Subsequently, the Third Circuit Task Force Report in 1985 outlined the problems with the lodestar method and recommended that courts use the percentage-of-recovery method instead of the lodestar method in common fund cases. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 734, 737 n. 20 (3d Cir. 2001) (percentage-of-recovery method long used in this Circuit in common fund cases).

Calculating attorneys' fees in class actions based on a common fund is favored because it rewards counsel for success and penalizes counsel for waste or failure even in cases where there is a fee shifting provision.  *In re Rite Aid Corp. Securities Litigation, 396 F.3d 294, 300 (3d Cir*

2005), citing *In re Prudential*, 148 F.3d at 333. *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir. 2000).

**B. The Fee Requested is Reasonable Under A Percentage of Recovery Analysis**

The Third Circuit has held there are seven factors to be considered by a district court in setting percentage attorney fee awards in percentage-of-recovery cases: (1) the amount of the value created and the number of persons benefited; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corporation*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). The Third Circuit has determined that "these fee award factors 'need not be applied in a formulaic way … and in certain cases one factor may outweigh the rest.'" *Rite Aid*, 396 F.3d at 301, *citing Gunter*, 223 F.3d at 195 n.1.  The Third Circuit concluded that "[w]hat is important is that the district court evaluate what class counsel actually did and how it benefited the class." 148 F.3d at 342.  In this case, all of the above factors are satisfied.

**1.    The Benefit to The Class Members From the $1,400,000 Common Fund Created Supports the Fee Request.**

First, the amount of the value created and the number of persons benefited supports the fee request. While this may not be a "megafund" case, it is nonetheless a substantial value achieved on behalf of the Class. In fact, smaller funds logically require a higher percentage fee award, due to the perception that large percentages of very large settlements lead to windfalls for attorneys. *See In re Prudential*, 148 F.3d at 339 (noting "inverse relationship" of large settlement to smaller percentage award); Court Awarded Attorney Fees, Report of the Third Circuit Task Force, 108 F.R.D. 237, 256 (1985) (recommending that percentage decrease as award increases).

4

Here, each class member who submits a claim will receive real recovery of either $25.00 in cash or a $50.00 voucher redeemable at full value.  Further illustrating the benefit of the Settlement Class, This expected recovery for the class is similar and in many cases exceeds many other TCPA class settlements. *See  cf. Couser v. Comenity Bank*, 125 F. Supp. 3d 1034 (S.D. Cal. 2015) (settlement amount favored final approval, where claims rate resulted in *pro rata* payment of approximately $13.75 per class member); *Manouchehri v. Styles for Less, Inc.*, No. 14cv2521 NLS, 2016 U.S. Dist. LEXIS 80038, at *4 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Spillman v. RPM Pizza, LLC*, 2013 U.S. Dist. LEXIS 72947 at *2, *9 (M.D. La. May 23, 2013) (final approve for up to $15 for each claimant); *Garret, et al. v. Sharps Compliance, Inc.*, No. 1:10-cv-04030, Dkt. No. 65 (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *Hashw v. Dep't Stores Nat'l Bank*, 2016 U.S. Dist LEXIS 61004 (D. Minn. 2016) (finally approving settlement where "each claimant will receive approximately $33.20."); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval were each claimant would be awarded $39.66); *Adams v. AllanceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Wright v. Nationstar Mortg. LLC*, 2016 U.S. Dist. LEXIS 115729, *28 (N.D. Ill. 2016) (finally approving "$45.00 recovery per claimant"); *Steinfeld v. Discover Fin. Servs.*, 2014 U.S. Dist. LEXIS 44855 at *4 and *11-*12 (N.D. Cal. Mar. 31, 2014) ($46.98 to each claimant).  In short, Class Counsel have conferred a real benefit to the Settlement Class and should be compensated for their achievement.

All of the class members are customers of Bloomingdale's, as evidenced by the fact that each class member signed up to the Lloyalist program. As such both available options ($25.00

in cash or $50.00 in Bloomingdale's voucher) provided to the class members have a real value. The voucher being fully redeemable at full value when purchasing any product at Bloomingdale's. There can be little argument that the voucher option had little intrinsic value, as when given the option between cash or a voucher, over sixty percent (60%) of those class members who filed a claims form, chose the fully redeemable voucher over the case. This clearly differentiates this class from other "coupon" classes where a) consumers were not given an option and/or b) consumers had little to no interest in the coupon being offered.

      2.    **The Presence or Absence of Substantial Objections by Members of the Class to the Settlement Terms and/or Fees Requested by Counsel**

The class notice was sent pursuant to Your Honor's Order to the class on August 09, 2015 where the notice specifically advised: "Depending upon how many class members submit valid claims forms, claimants may choose to receive up to $25 in cash or up to $50 in Bloomingdale's voucher value. The Settlement will provide a total of $1,400,000 (the "Settlement Fund"), including $750,000 in cash and $650,000 in vouchers, to settle and release claims of persons who signed up for a Loyallist account and thereafter received the above described text message on their cellular telephone during the time period set forth above (the "Settlement Class"). The Class notice further described how Class Counsel will be paid, along with instructions on how to object or opt out, if so desired. Included with the Class Notice was a Claims Form, allowing the consumers to choose between participating in the cash fund or voucher fund.

    Although the class had until October 08, 2018 to opt out or object to the settlement including the requested fees, no one has done so at this time.  As numerous district courts have held, the dearth of objections "strongly supports approval of the requested fee." *In re Flonase Antitrust Litig.*, No. 08-cv-3149, 2013  WL 2915606, at *7 (E.D. Pa. June 14, 2013); *see also In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *6

(finding the "lack of objections to the requested attorneys' fees supports the request"); *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 WL 238821, at *5 (recognizing as significant that "not one member of the class ha[d] filed an objection to the settlement" despite the fact that notice was mailed to 35,360 class members).

The absence of objections strongly supports approval of Class Counsel's requested fee award. *See Barel v. Bank of Am.*, 255 F.R.D. 393, 404 (E.D. Pa. 2009)(in approving fee request, stating "[i]mportantly, there were no objections").

### 3.  <u>The Skill and Efficiency of the Attorneys Involved</u>

The third *Gunter* factor measures the skill and efficiency of the attorneys involved. The quality of representation is measured by "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *In re Ikon Office Solutions v. Stuart*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) *quoting In re Computron Software*, 6 F.Supp. 2d 313, 323. (E.D. Pa. 1998). In short, the "single clearest factor reflecting the quality of class counsels' service to the class are the results obtained." *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000); *see also In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-cv-3202, 2009 WL 2137224, at *14 (E.D. Pa. July 16, 2009) (noting "the quality of representation in a case can be measured by the quality of the result achieved."); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) ("The result achieved is the clearest reflection of petitioners' skill and expertise.").

The Settlement obtained for Plaintiff and the Settlement Class Members would not have been achieved without the skill and experience of Class Counsel. Class Counsel consists of

attorneys from well-known and regarded consumer class action firms.  As set forth in the Marcus Declaration attached hereto, his firm is experienced and well versed in complex class action litigation, specifically in consumer class action litigation. *See* Marcus Decl. at 2. Indeed, in this District, he served as class counsel in consumer class actions including *Town & Country v. Meadowbrook, Inc.,* No. 15-cv-02519-PGS-LHG, *Jackson v. RMB, Inc.*, No. 14-cv-02204-MF (D.N.J 2015), *Krady v. A-1 Collection Agency, LLC* No. 14-cv-7062-TJB (D.N.J. 2016), *Willemsen v. Professional Recovery Services, Inc.* 14-cv-6421 JHR-AMD (D.N.J. 2016), *O'Brien v. Waldman & Kaplan, P.A.* 15-cv-7429 BRM-LHG (D.N.J. 2017), and *Truglio v. CBE Group* No. 15-cv-3813 (D.N.J 2017) along with consumer classes in other circuits, including in an $8.5 million dollar TCPA class settlement. *See Willis and Shvarts v. iHeartMedia, Inc.*, Case No. 16-CH-02455 (Cook County, Illinois Circuit Court) (Co-Lead). *See* Marcus Decl. at 4. Along with Marcus & Zelman, LLC, additional Class Counsel have substantial experience litigating consumer class action. *See* Declaration of Todd Friedman ¶ 10-13 ("Friedman Decl."), Declaration of Ross Schmierer ¶ 9 ("Schmierer Decl."), and Declaration of Stephen Denitis ¶ 20 ("Denitit Decl.").

Accordingly, the third *Gunter* factor also supports the requested fee award.

### 4.   The Complexity and Duration of the Litigation

The fourth *Gunter* factor, which measures the complexity and duration of the litigation, also supports Class Counsel's fee request. Indeed, the litigation, which has been litigated for over three years, involved several novel legal issues involving questions of law that was actively and aggressively litigated by both sides. For example issues related to standing after *Spokeo*, issues related to Automatic Telephone Dialing System (especially in light recent Circuit Court decisions) along with issues related to consent.  Should this class not be approved, these issues would still

remain, leaving the Class members with a substantial risk of recovering nothing. The Settlement in this case provides immediate substantial benefit to the class without further protracted litigation, and possibly appeals, with arguably no or little additional benefit to the Settlement Class.

Therefore, this factor also supports approval of the Settlement.

5.    The **Risk of Nonpayment**

Courts have long recognized that there is some degree of risk that attorneys will receive no fee – or at least a fee that does not reflect their efforts – when representing a class, as this risk is inherent when undertaking any contingency fee litigation. *See In re Philips/Magnavox Television Litig.*, No. 09-cv-3072, 2012 WL 1677244, at *18 (D.N.J. May 14, 2012).

Moreover, TCPA cases are, by their very nature, risky and are not fee shifting. "[T]he average TCPA case carries a 43% chance of success." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015). This case is no different. Plaintiffs risked losing on a motion to certify the class. *Compare, e.g.*, *Vigus v. Southern Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"), *and Versteeg v. Bennett, Deloney & Noyes, P.C.*, 271 F.R.D. 668, 674 (D. Wyo. 2011) (declining to certify TCPA class in light of individualized inquiry "into whether each individual gave 'express consent' by providing their wireless number" (internal citations omitted)), *with Green v. Service Master*, 2009 WL 1810769, at *2 (N.D. Ill. June 22, 2009) (in a fax blast case, "the question of consent may rightly be understood as a common question and the possibility that some class members may have consented is not sufficient to defeat class certification." (internal citations omitted)), *and Agne v. Papa John's Int'l, Inc.,* 286 F.R.D. 559,

567 (W.D. Wash. 2012) ("Defendants' speculation that customers may have given their express consent to receive text message advertising is not sufficient to defeat class certification.").

As noted above, this case took over several years to litigate. Despite Class Counsel's significant effort in litigating the matter during that time, they remain completely uncompensated for the time they invested and the expenses they advanced. Uncompensated expenditures can severely damage or destroy firms of the relatively small size of Class Counsel. There can be no dispute that this case entailed substantial risk of nonpayment, further supporting the requested fee.

Indeed, if the Settlement was not achieved, there is a very real chance that neither the Settlement Class Members nor Class Counsel would recover anything. Although Plaintiff and Class Counsel strongly believe in the merits of the claims, there are certainly no guarantees that in proceeding, the Lawsuit would have concluded as favorably as with the Settlement. The Defendant is well represented by experienced counsel. Had this case proceeded, Defendant would have continued to aggressively pursue its defenses, and likely presented a vigorous opposition to class certification, motion for summary judgment, and, if necessary, sought appellate review. Simply stated, this *Gunter* factor is amply satisfied here and further justifies Plaintiff's fee request.

**6.    The Amount of Time Devoted to the Litigation by Class Counsel**

Class Counsel has spent 799.2 hours prosecuting this Lawsuit on behalf of Plaintiff and the Settlement Class. *See* Summary Time Sheet marked as **Exhibit A;** Marcus Decl. at 21, Denitis Decl. at 14, Friedman Decl. at 24 and Schmierer Decl. at 5. Although Class Counsel consistently sought to keep costs and fees, to a minimum, the Lawsuit and defense presented by Defendant required a significant amount of work. The extensive litigation is set forth in above Nature of Litigation section.

Moreover, the hours expended by Class Counsel does not include the significant work Class Counsel will expend filing the final approval motion or overseeing the Settlement administration, including the distribution of the Settlement's proceeds especially as the settlement calls for a second distribution for uncashed checks.  For example, it is normal for Class Counsel to communicate with class members up to a year after final approval, especially as the second distribution will not happen until seven to eight months after final approval.  This additional work represents a material portion of time that counsel will spend for the Settlement Class that is not reflected in the lodestar calculation reflected above. *See, e.g., In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-cv-285, 2010 WL 547613, at *11 (noting "the time dedicated and expenditures incurred do not include costs that will arise immediately in the future, such as the settlement hearing conducted before this Court").

Accordingly, the number of hours devoted by Class Counsel to this Lawsuit supports the requested fee award.

### 7.    Awards in Similar Cases

The final *Gunter* factor compares the fee request with fee awards in similar cases. As noted above, Courts in this circuit have routinely awarded a third of the common fund in consumer class actions to those requested in this case. *See for example*; *Dobkin v. NRG Residential Solar Solutions* No. 15-cv-05089-BRM-LHG (awarding $2,333,333 in attorney fees on a TCPA settlement fund of $7,000,000). In this case, Plaintiffs are seeking thirty percent (30%).

Furthermore, district courts across the country have also commonly awarded in a third of the common fund, in excess of what is being sought here, in other TCPA cases. *See, e.g., Hageman*, 2015 WL 9855925, at *4 (awarding fees in the amount of $15 million, or one-third of the $45 million common fund); *Allen v. JPMorgan Chase Bank, N.A.*, 13-cv-8285 (N.D. Ill.) (awarding

one-third fee award on $10,200,000 settlement); *De Los Santos v Millward Brown Inc.*, 13-cv-80670-DPG (S.D. Fla. 2015) (awarding one-third of $11MM settlement for attorneys' fees); *Cummings v Sallie Mae*, 1:12-cv-9984 (N.D. Ill.) at DE 91 (awarding one-third of the $9,200,000 fund for fees); *Desai et al. v. ADT Sec. Servs., Inc.*, Case No. 1:11–cv–1925 (N.D. III. June 21, 2013), Doc. 243 (awarding fees of one-third of $15 million dollar fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13–cv–21016 (S.D. Fla. June 24, 2015), Doc. 95 (awarding fees and costs of one-third of the $4,500,000.00 settlement fund); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (33% of $3.3 million ceiling award); *Landsman*, 2015 WL 2383358, at *9 (awarding fees of one-third of $625,000 settlement fund)[1].

Based on the foregoing, this factor supports approval of Class Counsel's fee request.

## C.   A LODESTAR CROSS CHECK CONFIRMS THAT THE REQUESTED FEE AWARD IS REASONABLE

Perhaps most importantly, cross checking the requested fee with Plaintiff's counsel lodestar validates the reasonableness of the request. In evaluating the fee percentage in a common fund case such as the case at bar, the Third Circuit has "suggested it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar method.'" *Rite Aid*,

---

[1] Additional TCPA Fee Rulings awarding one third for fees follow: *Martin v. Dun & Bradstreet, Inc. et al*, No. 1:12-cv-00215 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (Dkt. No. 63) (awarding one-third fee); *Cummings v Sallie Mae*, 12 C-9984 (N.D. Ill. May 30, 2014) (Gottschall, J.) (Dkt. No. 91) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 1:12-cv-01612 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (Dkt. No. 86) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (Bucklo, J.) (Dkt. No. 243) (approving payment of one-third of common fund); *Paldo Sign and Display Company v. Topsail Sportswear, Inc.*, No. 1:08-cv-05959 (N.D. Ill. Dec. 21, 2011) (Kennelly, J.) (Dkt. No. 116) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 1:07-cv-05456 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (Dkt. No. 424)  (Dkt. No. 100) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 1:07-cv-05953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Dkt. No. 146) (same); *Hinman, et al., v. M & M Rental Ctr., Inc.*, No. 1:06-cv-01156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Dkt. No. 225) (same); *Holtzman v. CCH*, No. 1:07-cv-07033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Dkt. No. 33) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 1:07-cv-00066 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Dkt. No. 39) (same); *e.g., Locklear Elec., Inc. v. Norma L. Lay*, No. 3:09-cv-00531 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (awarding 33% of the common fund plus costs); *Accounting Outsourcing, LLC. V. Verizon Wireless,* No. 03-CV-161, 2007 U.S. Dist. LEXIS 97153, at *6-7 (M.D. La. 2007) (awarding in excess of 35% of the common fund plus costs).

396 F.3d at 307 (citing Prudential, 148 F. 3d at 333). However, the Court has made it clear that there is no "pre-defined" range for lodestar multipliers, and a court's analysis of the lodestar cross-check "entails neither mathematical precision nor bean counting." *Id*. at 306. Moreover, it is clear that the lodestar cross-check does not "trump the primary reliance on the percentage of common fund method" and a court may rely on an abridged lodestar or summaries. *Id*. at 305-306.

In the lodestar multiplier method, the "lodestar" refers to the amount the attorneys actually billed on the case: *i.e*., the number of hours worked multiplied by the hourly rate. Billing at the hourly rate, however, may understate such factors as the risk of litigation, the benefit to the class, and the need to give an incentive to plaintiffs' counsel. *Fitzgerald v. Gann Law Books*, 2014 U.S. Dist. LEXIS 174567 at 20. Hence the "multiplier." The multiplier is a factor by which the hourly billing lodestar is multiplied to arrive at class counsel's fee award. *In re Cendant Corp. PRIDES Litig*., 243 F.3d 722, 732 (3d Cir. 2001*)*. If, for example, counsel's hourly billing amounted to $10,000, and the lodestar multiplier were set at 1.5, the fee award would be $15,000. To select a multiplier (or assess the reasonableness of a proposed multiplier), courts have considered a number of factors: the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of non-recovery. *Rose v. Bank of Am. Corp.,* 2014 U.S. Dist. LEXIS 121641, 2014 WL 4273358*, at *6* (N.D. Cal. Aug. 29, 2014).

In Fitzgerald v. Gann Law Books, the court surveyed class action settlements approved in other TCPA cases and found the following:

> Most involved lodestar multipliers significantly lower than 4.78. See *Grannan v. Alliant Law Grp., P.C.,* No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101, 2012

13

WL 216522, at *1 (N.D. Cal. Jan. 24, 2012*) (multiplier of 1.47),* Rose*, 2014 U.S. Dist. LEXIS 121641, 2014 WL 4273358, at *1 (multiplier of 2.59); *Harris, 2011 U.S. Dist. LEXIS 117927, 2011 WL 4831157, at *7* (multiplier of 1.375); *Michel v. WM Healthcare Solutions, Inc., No. 1:10-cv-638, 2014 U.S. Dist. LEXIS 15606, 2014 WL 497031, at *2 (S.D. Ohio Feb. 7, 2014)* (multiplier of 1.8); *Vandervort v. Balboa Capital Corp*., 8 F. Supp. 3d 1200, 2014 WL 1274049 (C.D. Cal. 2014) (multiplier of 2.52); *Grant v. Capital Mgmt. Servs., L.P*., No. 10-CV-2471-WQH BGS, 2014 U.S. Dist. LEXIS 29836, 2014 WL 888665, at *1 (S.D. Cal. Mar. 5, 2014) (multiplier of 0.8); *Bellows v. NCO Financial Systems, Inc*., No. 07-cv-1413, 2009 U.S. Dist. LEXIS 273, 2009 WL 35468 (S.D. Cal. Jan. 5, 2009*) (multiplier of 1.793); *Arthur v. Sallie Mae*, No. 10-cv-0198, 2012 U.S. Dist. LEXIS 132061 **[*22]** Doc. 225, Motion for Award of Attorneys' Fees and Costs, (May 17, 2012) (multiplier of 2.71); *Ritchie*, 2014 U.S. Dist. LEXIS 115399, 2014 WL 3955268, at *3 (multiplier of 1.56).

This analysis by the court in Gann is important in evaluating Class Counsels' fee request here.   Class Counsels' loadstar is $425,632.50.   *See* **Exhibit A** and Marcus Decl. at ¶24. Comparing the fee request of $420,000.00 to Class Counsel's lodestar, it is abundantly clear that the requested fee award is fair, reasonable, and adequate, as it results in no multiplier to Class Counsel's current lodestar. Whereas we are seeking no multiplier here, Courts in this Circuit frequently award fees which result in multipliers ranging from 1.5 to 4. *In re Merck & Co., Inc. Vytorin ERISA Litig*., No. 08-cv-285, 2010 WL 547613, at *13 (D.N.J. Feb. 9, 2010) ("multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." (*citing In re Diet Drugs (Phentermine/Flenfuramine/Dexflenfuramine) Products Liab. Litig.*, 582 F.3d 524, 545 n.41 (3d Cir. 2009)); 3 Herbert Newberg & Albert Conte, Newberg on Class Litigations, § 14.03 at 14-5 (3d ed. 1992) (same); *see also In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) ( multiplier of 6.96).

Here, Class Counsels' request is their raw lodestar with no multiplier enhancement despite the fact the Class Counsel pursued this matter on a wholly contingent basis with the

14

expectation that if they were  not successful they would not be paid nor recoup monies they expended for litigation costs.  Based on the foregoing, Class Counsel's proposed fee award, which includes reimbursement for expenses, is eminently appropriate as it results in a modest multiplier.

## IV. Expenses

Case law and Federal Rule of Civil Procedure 23(h) is clear that along with reasonable fees, class counsel is entitled to reimbursement of the out of pocket expenses that were reasonably and necessarily incurred in furtherance of the prosecution of this Action.  Class counsel who recovery a common benefit for persons other than himself or his client is entitled reasonable attorney's fees and expenses from the Settlement Fund as a whole. *See, e.g., Keonig v. United States Bank, N.A.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

Class counsel has incurred $30,799.21 in total in expenses[2]. See Expense Reports marked as **Exhibit B,** Marcus Decl ¶ 25, Schmierer Decl. ¶ 8, Friedman Decl. ¶ 4 and Denitis Decl ¶ 15. All of the costs were reasonable and necessary in light of this complex litigation. Here Class Counsel has conferred a real benefit to the Settlement Class Members, a value that is immediate and readily quantifiable, which was as a direct result of Class Counsel's advocacy. As noted above, the settlement reached here was reached following extensive good faith negotiations. The Settlement Class Members were advised in the Class Notice that Class Counsel was seeking expenses, and no members of the Settlement Class submitted a written objection or opted out.

## V. Service Award

The requested $10,000 service award is reasonable and well within the range awarded by courts in cases involving TCPA violations. *See, e.g., Landsman & Funk, P.C. v. Skinder-Strauss*

---

[2] Class Counsel has agreed pursuant to the Settlement Agreement to limit its request for out of pocket expenses to $30,000.00.

15

*Assocs.*, No. 08CV3610 CLW, 2015 WL 2383358, at *9 (D.N.J. May 18, 2015), *aff'd*, 639 F.

App'x 880 (3d Cir. 2016) (awarding $10,000 to class representative in junk fax case[3]); *Lees v.*

*Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June

10, 2015) (awarding $10,000 to class representative in case involving nonconsensual calls to cell

phones); *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.*, No. 1:09-CV-1162, 2016 WL

6272094, at *3 (W.D. Mich. Mar. 1, 2016) (approving a $10,000 service award where Plaintiff

was deposed, reviewed documents, and assisted counsel); *Ikuseghan v. Multicare Health Sys.*, No.

C14-5539 BHS, 2016 WL 4363198, at *3 (W.D. Wash. Aug. 16, 2016) (finding an incentive award

of $15,000 to be reasonable); *Hageman v. AT & T Mobility* LLC, No. CV 13-50-BLG-RWA, 2015

WL 9855925, at *4 (D. Mont. Feb. 11, 2015) (approving $20,000 incentive award).

Plaintiff stepped forward at critical junctures of the litigation process and pursued the

Settlement Class's interests by filing suit on behalf of the members of the Settlement Class,

undertaking the responsibilities attendant with serving as a named plaintiff including participating

in an all-day deposition, assisting counsel with opposing defendant's motion, and assisting in

settling this matter. Plaintiff searched his files for relevant records, assisted in preparing and

signing an affidavit, and provided information to Class Counsel to assist in the preparation and

litigation of this Litigation. Marcus Decl. at ¶30-34.

Plaintiff also was consulted and provided input for strategic decisions, including

negotiation and approval of the Settlement terms. In short, Plaintiff actively participated in the

---

[3] Similar service awards have been approved for other consumer protection statutes within the 3rd Circuit. *See, e.g., Smith v. First Union Mortgage Corp.,* No. 98-cv-5360, 1999 U.S. Dist. LEXIS 18299 (E.D. Pa. Dec. 1, 1999) (approving incentive award of $7,500 to two class representatives in an FDCPA class Action settlement); *Bonett,* 2003 U.S. Dist. LEXIS 9757, *23 (award of $4,000 to class representative to compensate her for "her service to the Class"); *see also Barel v. Bank of Am.*, 255 F.R.D. 393, 404 (E.D. Pa. 2009) (awarding $10,000 to named plaintiff in FCRA class litigation).

prosecution of this case and devoted a substantial amount of time and energy in assisting in the successful prosecution of this Litigation.

As stated above, the direct notice to the class specifically identified that Plaintiff would be seeking an award of $10,000 for its work representing the class.  To date, not a single class member has objected to his request.  Plaintiff will advise the Court in its final approval memorandum of any such objections.

## VI.     CONCLUSION

For all of these reasons, Plaintiff respectfully requests the Court grant Class Counsel's fee request in amount of thirty percent of the common ($420,000.00), thirty thousand ($30,000.00) in reimbursement of expenses, and award a Case Contribution Award in the amount of ten thousand ($10,000.00) to Plaintiff.


Respectfully submitted this


*s/ Ari Marcus*
_____
Ari H. Marcus, Esq.
701 Cookman Avenue
Asbury Park, New Jersey 07712
Telephone: (732) 695-3282
Facsimile:   (732) 298-6256
E-Mail: Ari@MarcusZelman.com
*Attorneys for Plaintiff and the Class*

17